Matthew R. Lewis (7919)
Jascha K. Clark (16019)
Brittany J. Merrill (16104)
**RAY QUINNEY & NEBEKER P.C.**
36 South State Street, Ste. 1400
P.O. Box 45385
Salt Lake City, Utah  84145-0385
Telephone:  (801) 532-1500
Facsimile: (801) 532-7543
E-mail: mlewis@rqn.com
E-mail: jclark@rqn.com
E-mail: bmerrill@rqn.com

*Attorneys for Receiver, Maria E. Windham*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| MARIA E. WINDHAM, as Receiver for MARQUIS PROPERTIES, LLC, et al,<br><br>       Plaintiff,<br><br>       vs.<br><br>JEFFREY PAUL SNYDER,  an individual; J P SNYDER, INC., a Florida Corporation; JUDITH J. SNYDER, an individual; JOSEPH L. SIMONDS, an individual; ANNUITY THINK TANK, LLC, an expired Texas limited liability company; and; SIMONDS HOLDINGS, LLC, a dissolved Texas limited liability company; and JOHN DOES 1-5,<br><br>       Defendants. | **COMPLAINT**<br>**(Ancillary Suit)**<br><br><br>Case No. 2:18-cv-00063-BCW<br><br>Magistrate Judge Brooke C. Wells |

Maria E. Windham (the "Receiver"), as Receiver for Marquis Properties, LLC and the

assets of the Marquis Properties Receivership Estate complains against Defendants Jeffrey Paul

Snyder ("Jeff Snyder"), J P Snyder, Inc. ("J P Snyder"), Judith J. Snyder ("Judi Snyder"), Joseph

L. Simonds ("Simonds"), Annuity Think Tank, LLC ("Annuity Think Tank"), Simonds

Holdings, LLC ("Simmons Holdings"), and John Does 1-5 (each a "Defendant" and collectively,

"Defendants") as follows:

## INTRODUCTION

This lawsuit is related to a real estate Ponzi scheme (the "Marquis Ponzi Scheme")

perpetrated by Chad Deucher ("Deucher") through Marquis Properties, LLC ("Marquis

Properties"). Deucher pleaded guilty in his criminal case to operating Marquis Properties as a

Ponzi scheme from 2010 to 2016, and he is currently serving 84 months of prison time. *See*

*United States v. Chad Roger Deucher*, United States District Court for the District of Utah, Case

No. 2:16-CR-189-DN.

This is one of several "claw back" lawsuits concerning the Marquis Ponzi Scheme filed

by the Receiver appointed by the Court in the civil case filed by the Securities and Exchange

Commission ("SEC") concerning the Marquis Ponzi Scheme. In this lawsuit, the Receiver seeks

to "claw back" into the Marquis Properties Receivership Estate commission payments Marquis

Properties transferred to the Defendants, directly or indirectly, together with all other payments

and assets that Marquis Properties transferred to Defendants, directly or indirectly, while

Defendants had reason to know that the payments and assets were fraudulently transferred or for

which the Defendants failed to provide reasonably equivalent value.

The individual defendants to this claw back lawsuit Jeff Snyder, Judi Snyder, and

Simonds ("Individual Defendants") are, upon information and belief, residents of Florida who

worked together and in combination with Arizona resident Richard Clatfelter ("Clatfelter"), a co-

conspirator of Deucher's,[1] to solicit victim investors located outside of Utah to invest in the Marquis Ponzi Scheme.  The Individual Defendants successfully solicited more than 10 victim investors into the Marquis Ponzi Scheme and agreed to split commissions between themselves and Clatfelter.

As compensation for the Individual Defendants' successful solicitations of victim investors into the Marquis Ponzi Scheme, Deucher caused Marquis Properties to make payments of commissions and other transfers of assets directly and indirectly to the Defendants or to others for the Defendants' benefit.  Additionally, upon information and belief, some or all of the Individual Defendants obtained funds or other assets directly from victim investors that were intended for investment in the Marquis Ponzi Scheme, and took fees or other payments from the investors' funds before conveying the remainder to Marquis Properties.

Each and every Defendant must return the payments and other assets she received directly or indirectly from Marquis Properties and the value of all payments and transfers of assets from Marquis Properties for which she was a beneficiary.  This is because Deucher acted with fraudulent intent in furtherance of the Marquis Ponzi Scheme and while Marquis Properties was insolvent, when he caused Marquis Properties to transfer such payments and assets. Moreover, Marquis Properties did not receive reasonably equivalent value for these transfers and these Defendants will be unable to prove that they obtained the payments and transfers of assets in good faith without reason to know the payments constituted fraudulent transfers.

The Defendants must also provide an accounting to the Receiver and return all payments they received out of victim investors' funds because Defendants were unjustly enriched thereby

---

[1] Richard Clatfelter is a Defendant in the SEC's lawsuit.  On October 24, 2017, the court entered judgment against Clatfelter in the amount of $1,392,951.21.

3

and must be deemed to hold any payments of investor funds or assets in constructive trust for the Receiver.  Together, the value of the assets that the Defendants wrongfully obtained from the money invested by victims of the Marquis Ponzi Scheme exceeds $200,000.

## PARTIES

1.      Maria E. Windham is the court-appointed Receiver for Marquis Properties and the Marquis Properties Receivership Estate.

2.      Defendant Jeffrey Paul Snyder is an individual who, upon information and belief, resides in Florida.  Defendant Judith J. Snyder is an individual who, upon information and belief, resides in Florida.  Defendant J P. Snyder is a Florida Corporation with its principal place of business in Florida.  Jeffrey Paul Snyder was at all times relevant to this suit an owner of J P Snyder and Judith J. Snyder was an agent of J P Snyder.  Collectively, Jeffrey Paul Snyder, Judith J. Snyder, and J P Snyder are identified herein as the "Snyder Defendants."

3.      Defendant Joseph L. Simonds is an individual who, upon information and belief, resides in Florida.  Defendant Annuity Think Tank, LLC is an expired Texas limited liability company owned and controlled by Defendant Joseph L. Simonds.  Collectively, Joseph L. Simonds and Annuity Think Tank, LLC are identified herein as the "Simonds Defendants."

4.      Defendants John Does 1 through 5 are individuals or entities whose identities are presently unknown to the Receiver who received transfers of Marquis Properties assets directly or indirectly through or on behalf of the named Defendants.  The Receiver will move to amend her Complaint as the identities of the John Does become known.

## JURISDICTION AND VENUE

5.      The Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §

1331, 28 U.S.C. § 754, and principles of ancillary or supplemental jurisdiction under 28 U.S.C. § 1367.  This Complaint is brought to accomplish the objectives of the Amended Order Appointing Receiver, and thus this matter is ancillary to the Court's exclusive jurisdiction over the receivership estate.

6.     The Court has personal jurisdiction over Defendants pursuant to 28 U.S.C. §§754 and 1692.

7.     Venue is proper in this Court pursuant to 28 U.S.C. § 754 as this action is related to the SEC's parallel civil case pending in this District and the Receiver was appointed in this District.

## GENERAL ALLEGATIONS

### Marquis Ponzi Scheme

8.     Marquis Properties was operated by its principal Chad Deucher as a Ponzi scheme at all times relevant to the matters asserted in this action.

9.     On information and belief, Deucher raised this money from over 250 investors in Marquis Properties.

10.     Deucher represented to investors that Marquis Properties offered investments in turnkey real estate properties, promissory notes secured by real properties, and joint venture agreements to purchase real properties.  In that regard, Deucher represented that Marquis Properties located, purchased, renovated, and sold single family and small multi-family homes in lucrative areas of the country.  Deucher told investors that Marquis Properties had proven renovation crews, property managers and realtors on the ground to assist with all stages of the project, eliminating the need for direct involvement of the investors.

11.     Deucher represented to investors that they would receive guaranteed return of principal and returns on their investment in the form of rental income, interest payments, and/or profits from the sale of properties. He promised that Marquis Properties would pay return of "rents" on their investments even when no renters occupied the real properties.

12.     The investments offered by Marquis Properties constitute securities.

13.     Deucher represented that investments with Marquis Properties were safe, low-risk, or risk-free because investment proceeds would be secured by a first deed of trust on property wholly owned by Marquis Properties, and that investments would be "over-collateralized."

14.     Deucher omitted to disclose to investors, however, that (a) the properties Marquis Properties offered as collateral were not owned by Marquis Properties, were substantially encumbered, and/or were in uninhabitable or blighted condition; (b) that Marquis Properties itself was insolvent and unable to make investor interest and principal payments according to terms of agreements; and (c) that investor returns were being paid from the funds of new investors.

15.     In April 2017, Deucher pleaded guilty in his parallel criminal case, Case No. 2:16-CR-189-DN, to operating Marquis Properties as a Ponzi scheme between March 2010 and February 2016. Moreover, in his statement in advance of his guilty plea, Deucher admitted that he had engaged in securities fraud in relation to the sale of real-estate based securities. *See* Case No. 2:16-CR-189-DN, Dkt. No. 50 at ¶¶ 11(a)-(e).

16.     On October 11, 2017, Deucher was sentenced to 84 months in federal prison and, upon his release, 36 months of supervised release.  Deucher was also ordered to pay

$16,560,552.00 in restitution.

**The SEC Action**

17.     On January 19, 2016, in case No. 2:16-cv-00040-JNP, the Securities and

Exchange Commission ("SEC") filed suit (the "SEC Action") against Deucher, Clatfelter and

Marquis Properties, LLC.  Deucher's wife, Jessica Deucher, was named as a relief defendant.

18.     On January 20, 2016, this Court entered the Order Freezing Assets and Protecting

Documents (Dkt. No. 10) (the "Freeze Order").

19.     The Freeze Order specifically ordered that:

> Except as otherwise specified herein, all of Defendants' Assets are frozen. All
> persons and entities with direct or indirect control over any of Defendants' Assets,
> who receive actual notice of this order, are hereby restrained and enjoined from
> directly or indirectly transferring, setting off, receiving, changing, encumbering,
> concealing, selling, pledging, assigning, liquidating or otherwise disposing of or
> withdrawing such assets. This freeze shall include, but is not limited to,
> Defendants' Assets that are on deposit with financial institutions such as banks,
> brokerage firms and mutual funds. Such institutions are caused to hold or retain
> within their control and prohibit the withdrawal, removal, transfer, or other
> disposal of any such assets, funds, or other properties.

(*See id.* at 2-3.)

20.     On January 18, 2017, the Court entered the Order Appointing Receiver, pursuant

to which Maria E. Windham was appointed Receiver.  (*See* Dkt. No. 110.)

21.     On October 24, 2017, the Court amended the terms of the Order Appointing

Receiver and issued an Amended Order Appointing Receiver.[2]  (Dkt. No. 182.)

22.     The Court found appointment of the Receiver to be "necessary and appropriate for

the purposes of marshaling and preserving Marquis Properties' (the 'Entity Receivership

---

[2] On January 12, 2018, the Court entered a further Order Reappointing Maria E. Windham Receiver that reappointed
Ms. Windham on the same terms.  (Dkt. No. 205.)  This procedure is utilized to reset the 10 day clock to file notices
pursuant to 28 U.S.C. § 754.

Defendant') and Chad Deucher's (the 'Individual Receivership Defendant') (collectively the 'Receivership Defendants') assets that were frozen by the [Freeze Order]."   (Dkt. No. 182).

23.     The Court defined the "Receivership Estate" as the assets of Marquis Properties and Chad Deucher that were frozen by the Court's Order Freezing Assets on January 20, 2016 ("Frozen Assets"), as well as the assets of any other entities or individuals that: (a) are attributable to funds derived from investors or clients of the Defendants; (b) are held in constructive trust for the Defendants; and/or (c) were fraudulently transferred by the Defendants (the "Recoverable Assets").[3]  (*Id.* at 1-2.)

24.     Further, the Court found that based on the record in the proceedings before it, the Frozen Assets and Recoverable Assets include, but are not limited to all assets of the following entities owned or operated by the Individual Receivership Defendant: Marquis Air, LLC; Marquis Companies, LLC; Marquis Enterprises, LLC; Marquis, LLC; Marquis Direct; Invo; and Invo Direct (collectively with Marquis Properties, the "Marquis Entities").  (*Id.* at 2.)

25.     Moreover, the Court ordered that in order for any of the Receivership Defendants' property or interest in property, of any kind whatsoever, whether real or personal, whether direct or indirect, to be excluded from the Receivership Estate, the Receivership Defendants were required to file an accounting with the Court, including books and records sufficient to identify a source of the assets that is unconnected with investor funds, frozen assets, or other fraudulent activities, within 20 days of the entry of Amended Order Appointing Receiver.  (*Id.* at ¶ 4.)

26.     Pursuant to the terms of the Amended Order Appointing Receiver, the Receiver is charged with, among other things, investigating the activities of the Receivership Defendants,

---

[3] Except, the Court excluded the residence titled in the name of Relief Defendant, Jessica Deucher located at 1136 North 650 East, Orem Utah from the Receivership Estate. (Dkt. No. 182).

gathering and recovering assets of the Receivership Defendants, including pursuing claims to recover those assets, as necessary.  Specifically, Paragraph 6 of the Amended Order Appointing Receiver vests the Receiver with, among other authority, "all powers and authority of a receiver at equity."  (*See id.*at ¶ 6.)  The Receiver is caused to "pursue and preserve all of the Marquis Entities claims (*id.* at 7), and she has authority to "bring such legal actions based on law or equity in any state, federal, or foreign court as the Receiver deems necessary or appropriate in discharging her duties as Receiver."  (*Id.* at ¶ 9(I); s*ee also id.* at ¶ 36.)

**Transfers of Commissions and Other Payments to Defendants**

27.     While Deucher operated Marquis Properties as a Ponzi scheme, and while Marquis Properties, LLC was insolvent, Deucher caused payments of commissions and other payments directly or indirectly to Defendants from Marquis Properties bank accounts where the funds of victim investors were deposited.

28.     Some of the payments were made directly from Marquis Properties bank account by check or wire transactions.  Upon information and belief, other payments were made indirectly through Clatfelter and/or other persons.

29.     Deucher wrongfully caused Marquis Properties to make these payments of commissions and other payments in furtherance of his fraud with actual intent to hinder, delay or defraud investors.

30.     Deucher caused Marquis Properties to make these payments of commissions and other payments directly or indirectly to Defendants as compensation for Defendants soliciting additional investors into the Marquis Ponzi scheme.  Each and every one of these payments of commissions and other payments reduced the assets of Marquis Properties available to repay

investors.

31.     Upon information and belief, the Defendants cannot establish that they returned reasonably equivalent value for each of the payments received and did so in good faith without reason to know the payment was improper.

**Specific Payments Made to Each Defendant**

**Snyder Defendants**

32.     The Snyder Defendants are not licensed to sell securities.

33.     Nevertheless, the Snyder Defendants entered into an agreement with Clatfelter and the Simonds pursuant to which they agreed to cooperate in soliciting investors into Marquis Properties and to split the commissions that they expected to receive from Marquis Properties between Clatfelter, Jeff Snyder, and Simonds.

34.     Defendants Jeff Snyder and/or Judi Snyder, acting for themselves and on behalf of J.P. Snyder, successfully solicited more than 10 victim investors to invest money in Marquis Properties.

35.     For example, Jeff Snyder worked together with Judi Snyder to successfully solicit an investment in Marquis Properties from an individual named Chana Gilman. Other individuals successfully solicited by Jeff Snyder and/or Judi Snyder include, without limitation, the following persons: Eva Wenchell, Patti Connely, Marjorie Weiss, Roy Gardner, Jerry Cummings, Melody Firmani, Jeff Simpson, Cynthia Bauer, Ocean Dekker, Reginald Van Horne, and Angelo Boniello.

36.     Accordingly, beginning at least by 2012 and continuing at least through 2014, Deucher caused Marquis Properties to pay the Snyder Defendants more than 25 commissions

payments as compensation for Jeff Snyder's and Judi Snyder's solicitation of victim investors into the Marquis Ponzi scheme, including without limitation the following sample payments:

    a.   On June 13, 2012, Marquis Properties made a wire payment from its bank account at U.S. Bank, which had an account number ending in 9561, to J P Snyder, Inc. in the amount of $14,982 with the notation "Eva Winchell Sale for Jeff Snyder".

    b.   On February 26, 2013, Marquis Properties made a wire payment from its bank account at U.S. Bank, which had an account number ending in 9561, to J P Snyder, Inc. in the amount of 11,750 with the notation "Commission on Ocean Deal."

    c.   On June 6, 2014, Marquis Properties made a wire payment from its bank account at U.S. Bank, which had an account number ending in 8978, to J P Snyder, Inc. in the amount of 12,640 without notation, but he classified it as a "Commission Expense."

37.    Deucher caused Marquis Properties to identify each of these transfers in its records as "commissions."

38.    The payments to Snyder Defendants made from Marquis Properties U.S. Bank Accounts that are identified as "Commissions" amount to more than $190,000.

39.    Upon information and belief, Deucher also caused Marquis Properties to transfer additional payments and/or assets directly to the Snyder Defendants or indirectly through Clatfelter.

40.    The Snyder Defendants had reason to know the transfers paid to them were fraudulent transfers, and the transfers paid to them were unsupported by good faith and

reasonably equivalent value.

41.     The source of all of these payments to the Snyder Defendants was investor funds.

42.     Additionally, upon information and belief, the Snyder Defendants also collected investor funds directly into their possession for investment in the Marquis Ponzi Scheme.  Those funds were collected by the Snyder Defendants in constructive trust for Marquis Properties.  The Snyder must account for any such funds and turn them over to the Receiver.

**Simonds Defendants**

43.     The Simonds Defendants are not licensed to sell securities.

44.     Nonetheless, Defendant Joseph L. Simonds entered into an agreement with Clatfelter and the Snyder Defendants to cooperate in soliciting investors into Marquis Properties and to split the commissions that they expected to receive from Marquis Properties between Clatfelter, Jeff Snyder, and Simonds.

45.     Simonds successfully solicited or participated in soliciting multiple investors into Marquis Properties.  Investors successfully solicited to invest in the Marquis Ponzi Scheme by Simonds include but are not limited to Eva Winchell and Marjorie Weiss.

46.      Accordingly,  beginning at least by 2012 and continuing at least through 2014, Deucher caused Marquis Properties to pay the Simonds Defendants multiple commission payments and other payments as compensation for Simonds' successful solicitation of victim investors into the Marquis Ponzi Scheme, including without limitation the following payment:

   a.   On June 13, 2012, Marquis Properties paid a check from its bank account at U.S. Bank, which had an account number ending in 9561, to Annuity Think Tank, LLC. in the amount of $14,982 with the notation "Joe Simons for Eva Winchell".

47.     Deucher caused Marquis Properties to identify transfers in its records as commissions.

48.     Deucher also caused Marquis Properties to transfer additional payments and/or assets to the Simonds Defendants.

     a.   On July 10, 2014, Marquis Properties made a payment from a bank account at U.S. Bank with an account number ending in 2772 to Annuity Think Tank, LLC in the amount of $80,000 without notation.

49.     Upon information and belief there were additional transfers of assets by Marquis Properties to the Simonds Defendants indirectly through Clatfelter.

50.     Under the circumstances, the Simonds Defendants had reason to know that transfers paid to them were fraudulent transfers.

51.     The transfers paid to the Simonds Defendants were unsupported by good faith and reasonably equivalent value.

52.     Together the transfers of funds by Marquis Properties to the Simonds Defendants exceed $120,000.

53.     The source of all of these payments to the Simonds Defendants was investor funds.

54.     Additionally, upon information and belief, the Simonds Defendants also collected investor funds directly into their possession for investment in the Marquis Ponzi Scheme.  Those funds were collected by the Simonds Defendants are subject to a constructive trust for Marquis Properties. The Simonds defendants must account for any such funds and turn them over to the Receiver.

## FIRST CLAIM FOR RELIEF
### (Fraudulent Transfer – Utah Uniform Fraudulent Transfer Act – All Defendants)

55.    The Receiver realleges and incorporates by this reference the foregoing paragraphs of the Complaint.

56.    Each and every Defendant received transfer(s) of assets from Marquis Properties.

57.    At all times relevant to the matters asserted herein, Deucher operated Marquis Properties as a Ponzi scheme.

58.    Because the transfers were made at the direction of Chad Deucher while Marquis Properties was operated as a Ponzi scheme, as a matter of law, these transfers were made  with the intent to hinder, delay or defraud creditors and/or investors of Marquis Properties.

59.    Furthermore, the transfers were made at a time when Marquis Properties was insolvent

60.    The payments were made from investor funds and reduced the amount of money available to return to investors.

61.    Defendants will be unable to establish that Marquis Properties received reasonably equivalent value for the transfers and that Defendants took the payments in good faith.

## SECOND CLAIM FOR RELIEF
### (Unjust enrichment – All Defendants)

62.     The Receiver realleges and incorporates by this reference the foregoing paragraphs of the Complaint.

63.     A benefit was conferred upon each and every Defendant by transfer of assets belonging to Marquis Properties to the Defendant or to another for the Defendant's benefit.

64.     Each and every Defendant knew of the benefit conferred upon her by receipt of assets from Marquis Properties.

65.     Each and every Defendant's retention of assets or the benefit of the assets conferred by Marquis Properties, which constitute investments of injured victims of the Marquis Ponzi Scheme, would be inequitable under the circumstances, without payment of the value of the assets to the Receiver for return to the injured persons.

66.     At all times relevant to the matters asserted herein, each Defendant did not have a license to sell securities and/or each Defendant otherwise sold securities in violation of applicable securities laws.

67.     Defendants could not legally accept commissions for bringing investors into the Ponzi scheme in violation of securities laws.

68.     It would be unjust to allow Defendants to retain these illegally obtained commissions or retain the benefit thereof.

## THIRD CLAIM FOR RELIEF
### (Constructive Trust – All Defendants)

69.     The Receiver realleges and incorporates by this reference the foregoing paragraphs of the Complaint.

70.     The commissions, fees, and other funds paid to each of the Defendants are proceeds that were unlawfully obtained from investors by means of artifice and fraud. Accordingly, those proceeds, including the fees and funds received by each of the Defendants, are impressed with a constructive trust.

71.     A benefit was conferred upon each and every Defendant by transfer of assets belonging to Marquis Properties to the Defendant.

72.     The Defendants have been unjustly enriched.

73.     It would be unjust to allow Defendants to retain these illegally obtained investor asset funds.

74.     Each and every Defendant's retention of assets conferred by Marquis property, which constitute investments of injured victims of the Marquis Ponzi Scheme, would be inequitable under the circumstances, without payment of the value of the assets to the Receiver for return to the injured persons.

75.     The Receiver is entitled to recover prejudgment interest from each Defendant from the date of the receipt of each payment or fee.

## FOURTH CLAIM FOR RELIEF
### (Accounting – All Defendants)

76.     The Receiver realleges and incorporates by this reference the foregoing paragraphs of this Complaint.

77.     As of the date of the filing of this Complaint, the Receiver has performed and continues to perform an investigation and analysis of the use of the proceeds of the fraudulent investment offerings, including the payment of fees to the Defendants.

78.     As part of her investigation and analysis, the Receiver endeavored to determine

16

how much money was actually paid to each of the Defendants.  Based upon the information currently available to her, the Receiver has made an initial calculation of the amounts paid to each Defendant.

79.   The Receiver understands that the information available to her may be incomplete.

80.   The Receiver is entitled to an accounting from each of the Defendants, including the return of all monies received, directly or indirectly, from Marquis Properties.

**WHEREFORE**, the Receiver prays as follows:

A.  That the Court avoid all fraudulent transfers, and each and every Defendant be ordered to return to the Receivership Estate the funds that she received from Marquis Properties, and that judgment be entered against each Defendant and in favor of the Receiver for the total amount transferred to each Defendant;

B.  In the case that the funds were spent to acquire any real or personal property, the Receiver requests that a constructive trust be imposed upon the property, and an order that it must immediately be turned over to the Receiver;

C.  For a constructive trust to be imposed on all assets the retention of which would unjustly enrich Defendants;

D.  For an accounting of funds belonging to Marquis Properties investors collected by Defendants;

E.  For prejudgment interest, if appropriate; and

F.  For such other relief as the Court may allow.

DATED this 18th day of January, 2018.

RAY QUINNEY & NEBEKER P.C.

*/s/  Jascha K. Clark*
Matthew R. Lewis
Jascha K. Clark
Brittany J. Merrill

*Attorney for the Receiver, Maria E. Windham*

1440632