IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| MARIA E. WINDHAM, as Receiver for MARQUIS PROPERTIES, LLC, et al.,<br><br>Plaintiff,<br><br>v.<br><br>JEFFREY PAUL SNYDER, an individual; JP SNYDER, INC., a Florida Corporation; JUDITH J. SNYDER, an individual; JOSEPH L. SIMONDS, an individual; ANNUITY THINK TANK, LLC, an expired Texas limited liability company; and SIMONDS HOLDINGS, LLC, a dissolved Texas limited liability company; and JOHN DOES 1-5,<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR STAY OF CIVIL CASE PENDING COMPLETION OF A PARALLEL CRIMINAL INDICTMENT (ECF NO. 29)**<br><br>Case No. 2:18-cv-00063-RJS-EJF<br><br>District Judge Robert J. Shelby<br><br>Magistrate Judge Evelyn J. Furse |

Defendants Jeffrey Paul Snyder, Judith Snyder, and JP Snyder, Inc. (collectively, "Snyder Defendants") move to stay this case pending the completion of a parallel criminal indictment brought against Defendant Jeffrey Snyder. (Mot. for Stay of Civil Case Pending Completion of Parallel Criminal Indictment ("Mot. to Stay"), ECF No. 29.) The Snyder Defendants argue that a stay is necessary because proceeding with parallel civil and criminal cases will substantially prejudice Mr. Snyder, forcing him to choose between asserting his Fifth Amendment rights and potentially receiving an adverse inference in this case, or testifying in this case and potentially incriminating himself in the criminal case. (See id.) Plaintiff Maria E. Windham as Receiver for Marquis Properties, LLC ("Receiver Windham") opposes the Motion, arguing that her suit is not

1

parallel to Mr. Snyder's criminal indictment and that the requested stay is not in the public interest or in interests of justice. (Mem. in Opp'n to Snyders' Mot for Stay of Civil Case Pending Completion of a Parallel Criminal Indictment ("Opp'n"), ECF No. 34.) In particular, Receiver Windham argues that a stay may deny the investors whose interests she represents the opportunity to obtain the return of the allegedly fraudulent transfers at issue in this case if the receivership is terminated before the stay ends. (Id. at 8–9.) Defendants Joseph L. Simonds, Annuity Think Tank, LLC, and Simonds Holdings, LLC ("Simonds Defendants") did not join in the Motion to Stay or otherwise respond to the Motion.

As set forth in more detail below, the Court[1] finds that the interests of justice require a stay at this time as to the Snyder Defendants only. Accordingly, the Court GRANTS IN PART the Motion to Stay and will stay this action as to the Snyder Defendants pending the completion of Mr. Snyder's criminal matter. However, the Court DENIES IN PART the Motion to Stay since it seeks a stay of the entire action. The case may proceed as to the Simonds Defendants, as the Snyder Defendants do not articulate a reason that a stay of the entire case is appropriate, and the Simonds Defendants have not joined in the Motion to Stay or otherwise argued in favor of staying the entire case. Further, the Court agrees with Receiver Windham that investors may suffer prejudice if the receivership is terminated before the stay in this case as to the Snyder Defendants ends. Therefore, if the receivership is nearing completion and this

---

[1] On June 7, 2018, District Judge Robert J. Shelby referred this case to the undersigned Magistrate Judge under 28 U.S.C. § 636(b)(1)(A). (ECF No. 38.)

case is still stayed as to the Snyder Defendants, Receiver Windham may move to lift the stay.

## FACTUAL BACKGROUND

Receiver Windham filed the Complaint in this matter on January 18, 2018. (Compl., ECF No. 2.) This is an ancillary proceeding to the Securities and Exchange Commission action pending in this District, No. 2:16-cv-00040-JNP, which involves an alleged real estate Ponzi scheme perpetrated by Chad Deucher ("Deucher") through Marquis Properties, LLC ("Marquis Properties"). (Id. at 2, 7.) The Complaint in this case alleges that Marquis Properties solicited individuals to invest in turnkey real estate properties in the form of promissory notes with the guarantee that they would receive returns of principal and returns on their investments in the form of rental income, interest payments, and/or profits from the sale of the properties. (Compl., ¶¶ 10–11.) However, the Complaint claims that Mr. Deucher failed to disclose to investors that the properties offered as collateral were not owned by Marquis Properties, were substantially encumbered, and/or were in uninhabitable or blighted condition, that Marquis Properties was insolvent and unable to make investor interest and principal payments according to terms of agreements, and that investor returns were being paid from the funds of new investors. (Id., ¶ 14.) Receiver Windham alleges that while Marquis Properties was insolvent, Mr. Deucher caused payments of commissions and other payments directly or indirectly to the Snyder Defendants and Simonds Defendants from Marquis Properties bank accounts where investors funds were deposited. (Id., ¶ 27.)

With respect to the Snyder Defendants in particular, Receiver Windham alleges that they are not licensed to sell securities, but nevertheless entered into an agreement with the Simonds Defendants and another individual pursuant to which they agreed to cooperate in soliciting investors into Marquis Properties and to split the commissions that they expected to receive from Marquis Properties. (Compl., ¶ 33.) The Complaint further alleges that the Snyder Defendants successfully solicited more than ten (10) investors to invest money in Marquis Properties, and received commissions and other transfers from Marquis Properties, which were made from investor funds. (Id., ¶¶ 34–42.)

Through the lawsuit, Receiver Windham seeks to "claw back" into the Marquis Properties Receivership Estate commission payments that Marquis Properties transferred to the Snyder Defendants and Simonds Defendants, along with other payments and assets that Marquis Properties transferred to them, when the Snyder Defendants and Simonds Defendants had reason to know that Marquis Properties fraudulently transferred those payments and assets or failed to provide reasonably equivalent value. (Compl. at 2–3.) Receiver Windham asserts claims for fraudulent transfer, unjust enrichment, constructive trust, and accounting against all Defendants. (Id., ¶¶ 55–80.) As relevant here, Receiver Windham alleges in connection with her unjust enrichment claim that the Defendants, including Mr. Snyder, "did not have a license to sell securities and/or each Defendant otherwise sold securities in violation of applicable securities laws," and that they could not legally accept commissions for bringing investors into the Ponzi scheme in violation of securities laws." (Id., ¶¶ 66–67.) Further, as part of her constructive trust claim, Receiver Windham alleges that "[t]he

4

commissions, fees, and other funds paid to each of the Defendants are proceeds that were unlawfully obtained from investors by means of artifice and fraud," and are therefore "impressed with a constructive trust." (Id., ¶ 70.)

On April 16, 2018, the State of Utah served Mr. Snyder with an Affidavit of Probable Cause which accused him of, among other things, committing securities fraud. (Aff. Of Probable Cause, Ex. 1 to Mot. to Stay, ECF No. 29-1.) Count 2 of the of the Affidavit asserts that Mr. Snyder committed securities fraud in violation of Utah Code Ann. § 61-1-1 with respect to the Marquis Properties investment. (Id. at 10–14.) Among other things, the State of Utah asserts that Mr. Snyder offered and sold securities in the form of promissory notes on behalf of Marquis Properties to a Utah investor, and that he was not licensed to or qualified to offer any advice or sell securities investments. (Id. at 4–5.) In addition, the state court docket attached to the back of the Affidavit indicates that Mr. Snyder was formally charged on Count 2 and the Information/Indictment filed on April 16, 2018. (See Docket, Ex. 1 to Mot. to Stay, ECF No. 29-1 at 17–18.)

## DISCUSSION

A trial court has the inherent power to stay civil proceedings. See Pet Milk Co. v. Ritter, 323 F.2d 586, 588 (10th Cir. 1963) ("It is well settled that the district court has the power to stay proceedings pending before it . . ."). "The Constitution does not generally require a stay of civil proceeding pending the outcome of criminal proceedings, absent substantial prejudice to a party's rights . . . When deciding whether the interests of justice seem to require a stay, the court must consider the extent to which a party's Fifth

5

Amendment rights are implicated." Creative Consumer Concepts, Inc. v. Kreisler, 563 F.3d 1070, 1080 (10th Cir. 2009).

For the Court to grant a stay, "a party must demonstrate a clear case of hardship or inequity if even a fair possibility exists that the stay would damage another party." Ben Ezra, Weinstein, & Co. v. Am. Online Inc., 206 F.3d 980, 987 (10th Cir. 2000) (internal quotations omitted). In determining whether to grant a stay, the Court considers a combination of six factors:

> (1) the extent to which the issues in the criminal case overlap with those presented in the civil case; (2) the status of the case, including whether the defendants have been indicted; (3) the private interests of the plaintiffs in proceeding expeditiously weighed against the prejudice to plaintiffs caused by the delay; (4) the private interests of and burden on the defendants; (5) the interests of the courts; and (6) the public interest.

M.D. Diet Weight Loss & Nutrition Clinic, L.C. v. Absolute Weight Loss & Nutrition Ctr., LLC, No. 2:05-CV-605, 2006 WL 2471524, at *1 (D. Utah Aug. 24, 2006) (unpublished). Considering these factors, the Court finds a stay necessary at this time as to the Snyder Defendants.

### A. Overlap of the Issues

Issues in both the Mr. Snyder's criminal case and this case significantly overlap. While Receiver Windham argues that the overlap of material issues is "minimal," (Opp'n at 5), the Complaint belies this contention. This case centers on the involvement of the Snyder and Simonds Defendants in the alleged real estate Ponzi scheme involving Marquis Properties. Receiver Windham alleges in the Complaint that the Snyder Defendants, among others, were involved in that scheme and successfully solicited at least ten investors to invest in Marquis Properties. Further, she asserts that the Snyder Defendants were not licensed to sell securities and could not legally accept

6

commissions for bringing investors into the alleged scheme. Moreover, she alleges that the funds paid to the Snyder Defendants were "unlawfully obtained from investors by means of artifice and fraud." In Mr. Snyder's criminal matter, the State of Utah alleges that, among other things, that Mr. Snyder engaged in securities fraud with respect to the Windham Properties investment. In particular, the State asserts that Mr. Snyder offered and sold securities on behalf of Marquis Properties to a Utah investor, and that he was not licensed to or qualified to offer any advice or sell securities investments.

Further, the Love v. City of Lanett, No. 3:09-CV-622-MEF, 2009 WL 2525371 (M.D. Ala. Aug. 17, 2009) (unpublished), case that Receiver Windham cites is not binding on the Court and is of little persuasive value since the nature and facts of that case—involving alleged sexual assault—differ significantly from this case.

The Court acknowledges that the criminal matter involves only one defendant in this case—Mr. Snyder. For the most part, the Complaint refers generally to the Snyder Defendants collectively and alleges that they participated in the same scheme together. Therefore, Mr. Snyder's actions cannot be disentangled from those of the other Snyder Defendants in this case, making a stay as to the Snyder Defendants appropriate. However, the Snyder Defendants fail to explain why a stay is necessary as to the Simonds Defendants, and the Simonds Defendants did not join in the Motion to Stay or otherwise argue in favor of staying the entire case.

Both this case and Mr. Snyder's criminal case relate to his involvement in soliciting investments for Marquis Properties, both cases involve allegations that he lacked a license to sell securities, and both cases assert that he committed fraud.

7

Because significant overlap between this case and Mr. Snyder's criminal matter exists, this factor weighs in favor of granting a stay as to the Snyder Defendants.

### B. Status of the Criminal Case

The State of Utah has indicted Mr. Snyder in the criminal matter and a review of the docket in that case indicates that the case is still pending. See State v. Snyder, Case No. 181904268FS (Utah 3d Dist. Ct.). "'[T]he strongest case for granting a stay is where a party under criminal indictment is required to defend a civil proceeding involving the same matter.'" In re CFS-Related Sec. Fraud Litig., 256 F. Supp. 2d 1227, 1238 (N.D. Okla. 2003) (quoting Volmar Distribs., Inc. v. New York Post Co., 152 F.R.D. 36, 39 (S.D.N.Y.1993)). "This is because 'the likelihood that a defendant may make incriminating statements is greatest after an indictment has issued . . . .'" Id. (quoting Trustees of the Plumbers & Pipefitters Nat'l Pension Fund v. Transworld Mech., Inc., 886 F. Supp. 1134, 1139 (S.D.N.Y. 1995)). Thus, the status of Mr. Snyder's criminal matter also weighs in favor of staying the case as to the Snyder Defendants at this time.

### C. Plaintiff's Interests

Receiver Windham and the investors whose interests she represents undoubtedly have an interest in the "expeditious resolution" of this case. See Tibbs v. Vaughn, No. 2:08-cv-787, 2012 WL 4480360, at *3 (D. Utah Sept. 28, 2012) (unpublished) (internal quotations omitted). However, Receiver Windham only filed this case in January 2018 and the Snyder Defendants quickly moved to stay the case after Mr. Snyder's indictment. Moreover, Receiver Windham's interest in the expeditious resolution of her case does not outweigh Mr. Snyder's Fifth Amendment rights. See Transworld Mech., 886 F. Supp. at 1140 (finding that the plaintiffs' interest in

8

"expeditious resolution of their case," among other things, is "trumped by defendants' interests in avoiding the quandary of choosing between waiving their Fifth Amendment rights or effectively forfeiting the civil case.").

Importantly, Receiver Windham does not argue that Mr. Snyder or any of the other Snyder Defendants are, for example, engaged in continuing misconduct or are hiding or otherwise depleting the funds that she seeks to claw back in this lawsuit. In such instances, courts have declined to stay civil proceedings. See, e.g., Int'l Bus. Machs Corp. v. Brown, 857 F. Supp. 1384, 1391 (C.D. Cal. 1994) (noting risk of further depletion of assets to satisfy possible judgment with passage of time).

Receiver Windham does point out that the investors whose interests she represents would suffer prejudice if the receivership is terminated before this case ends. Such a possibility is hypothetical at this point, but the Court recognizes that this issue might arise in the future and is a legitimate concern. However, the Court believes that allowing Receiver Windham to move to lift the stay as to the Snyder Defendants when and if this situation develops ameliorates this concern.

For the reasons outlined above, this factor weighs in favor of a stay as to the Snyder Defendants at this time. However, if this case is still stayed and the receivership is nearing an end, Receiver Windham may move to lift the stay.

### D. Defendants' Interests

The Court also takes into consideration the burden on Mr. Snyder in proceeding with parallel criminal and civil actions. The Court agrees with Mr. Snyder that he would suffer prejudice in having to proceed simultaneously in both cases, as it would place him in the position of having to waive his Fifth Amendment rights in this case and testify

and potentially incriminate himself in this case, or assert his Fifth Amendment rights and effectively forfeit this case. See, e.g., Javier H. v. Garcia-Botello, 218 F.R.D. 72, 75 (W.D.N.Y. 2003) ("[I]f deposed in the civil case, the criminal defendants would invoke their Fifth Amendment privilege. [] If discovery moves forward, each defendant will be faced with the difficult choice between asserting his or her right against self-incrimination, thereby inviting prejudice in the civil case, or waiving those rights, thereby courting liability in the criminal case"); Vardi Trading Co. v. Overseas Diamond Corp., No. 85 CIV. 2240 (CSH), 1987 WL 17662, at *2 (S.D.N.Y. Sept. 23, 1987) (unpublished) ("A stay of these civil proceedings constitutes a necessary and hence appropriate safeguard of defendants' fifth amendment privilege. Defendants cannot, consistent with that privilege, be compelled to choose between waiving it, or suffering the practical equivalent of a judgment by default in the civil case."). Thus, this factor strongly weighs in favor of a stay as to the Snyder Defendants.

**E. The Interests of the Courts and the Public**

The remaining factors also weigh in favor of a stay. Proceeding first with the criminal matter may narrow the issues in this case and streamline discovery, which would ultimately benefit this case and expedite resolution. See, e.g., Douglas v. United States, Nos. C 03–04518, C 04–05357, 2006 WL 2038375, at *5 (N.D. Cal. 2006) (unpublished) ("Allowing the criminal action to proceed first may narrow the issues and streamline discovery in the civil proceeding . . ."); Transworld Mech., 886 F. Supp. at 1140 (stating that "the resolution of the [c]riminal [c]ase may reduce the scope of discovery in the civil case and the evidence gathered during the criminal prosecution can later be used in the civil action").

10

In addition, while the Court and the public have an interest in the swift resolution of civil litigation, interests in the prompt and fair resolution of criminal matters take precedence. See Campbell v. Eastland, 307 F.2d 478, 487 (5th Cir. 1962) ("Administrative policy gives priority to the public interest in law enforcement. This seems so necessary and wise that a trial judge should give substantial weight to it in balancing the policy against the right of a civil litigant to a reasonably prompt determination of his civil claims or liabilities."); Javier H., 218 F.R.D. at 75 (stating that "the public's interest in the integrity of the criminal case is entitled to precedence over the civil litigant").

**ORDER**

For the foregoing reasons, the Court finds that the applicable factors weigh in favor of a stay as to the Snyder Defendants. Accordingly, the Court GRANTS IN PART the Snyder Defendants' Motion and ORDERS this action stayed as to the Snyder Defendants pending the resolution of Mr. Snyder's criminal matter. When the criminal matter against Mr. Snyder is resolved, the Snyder Defendants must notify the Court within seven (7) days. Moreover, if the receivership is nearing completion and this case is still stayed as to the Snyder Defendants, Receiver Windham may move to lift the stay.

The Court DENIES IN PART the Snyder Defendants Motion, as it seeks to stay the entire action. The case will proceed as to the Simonds Defendants given that the Snyder Defendants did not articulate a reason that a stay of the entire case is appropriate and the Simonds Defendants did not join in the Motion to Stay or otherwise argue in favor of staying the entire case. The Simonds Defendants are ORDERED to answer or otherwise respond to the Complaint within fourteen (14) days of the date of

this Order. The Simonds Defendants' answer or response to the Complaint was due April 23, 2018 (ECF No. 27), and they have not responded to the Complaint or sought a further extension of time to respond from the Court. Further, Receiver Windham and the Simonds Defendants must comply with Paragraph 2 of the Order to Propose Schedule (ECF No. 28) within fourteen (14) days of the date of this Order.

DATED this 28th day of August, 2018.

BY THE COURT:

EVELYN J. FURSE
United States Magistrate Judge